# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# AT HARRISONBURG

| | | |
|---|---|---|
| POUNEH BIAZARI, Co-Administrator of the Estate of Payman Biazarikari, Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 5:16CV00049 |
| CAPITAL SAFETY, INC. AND DB INDUSTRIES, INC. d/b/a DBI-SALA | ) ) ) ) ) | (Removed from the Circuit Court for the City of Lynchburg, Virginia, Case No. CL15000606) |
| Defendants. | ) | |

## DEFENDANT DB INDUSTRIES, LLC'S MOTION FOR PROTECTIVE ORDER

NOW COMES Defendant DB Industries, LLC d/b/a Capital Safety USA (incorrectly designated as Capital Safety, Inc. and DB Industries, Inc., and hereafter "Capital Safety")[1], by and through its attorneys, MILES & STOCKBRIDGE P.C., and for its Motion for Protective Order ("Motion"), pursuant to Fed. R. of Civ. P. 26(c), states as follows:

1. In accordance with Fed. R. Civ. P. 26(c)(1), counsel for Capital Safety and Plaintiff's counsel have met and conferred on several occasions, including most recently by telephone on March 14, 2017, in hopes of coming to agreement and avoiding the need for the

---

[1] There is no "Capital Safety, Inc." DB Industries, Inc. converted into DB Industries, LLC on December 31, 2012, and does business as Capital Safety USA.

1

Court's intervention. Unfortunately, the parties remain unable to agree on the terms of the Protective Order that is the subject of this motion.

2. Capital Safety seeks a Protective Order preventing disclosure of information and/or documents under Fed. R. Civ. P. 26(c)(1)(G) because the requested information and/or documents contain confidential, trade secret, and/or proprietary information. Plaintiff does not oppose Capital Safety's request, but seeks a provision that would allow her to share Capital Safety's confidential information with others outside of this case. Capital Safety maintains that such a provision is not needed for Plaintiff to prosecute her claim and would needlessly compromise Capital Safety's proprietary information.

3. This Motion is supported by the attached Memorandum in Support.

WHEREFORE, Capital Safety respectfully requests that this Court grant Capital Safety's Motion, and enter the proposed protective order attached hereto as Exhibit 1.

Respectfully submitted,

Dated: March 17, 2017.

*s/CARL R. SCHWERTZ*_____
Carl R. Schwertz, Esq. (VSB#27399)
Jeffrey S. Poretz, Esq. (VSB#38529)
MILES & STOCKBRDIGE P.C.
1715 Pinnacle Drive, Suite 1500
Tysons Corner, VA 22102-3833
Direct: 703-610-8691
Fax: 703-610-8686
E-mail: cschwertz@milesstockbridge.com
Email: jporetz@milesstockbridge.com

*Counsel for DB INDUSTRIES, LLC d/b/a CAPITAL SAFETY USA*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT HARRISONBURG

| | |
|---|---|
| POUNEH BIAZARI, Co-Administrator of ) <br> the Estate of Payman Biazarikari, Deceased, ) <br> ) <br> ) <br>       Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> CAPITAL SAFETY, INC. ) <br> AND DB INDUSTRIES, INC. d/b/a ) <br> DBI-SALA ) <br> ) <br>       Defendants. ) | No. 5:16CV00049 <br><br> (Removed from the Circuit Court <br> for the City of Lynchburg, Virginia, <br> Case No. CL15000606) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT DB INDUSTRIES, LLC'S MOTION FOR PROTECTIVE ORDER**

NOW COMES Defendant DB Industries, LLC d/b/a Capital Safety USA (incorrectly designated as Capital Safety, Inc. and DB Industries, Inc., and hereafter "Capital Safety")[1], by and through its attorneys, MILES & STOCKBRIDGE P.C., and for its Memorandum in Support of Motion for Protective Order, pursuant to Fed. R. of Civ. P. 26(c), states as follows:

## I. INTRODUCTION

This case arises out of an allegedly defective fall protection product manufactured by Capital Safety, specifically the DBI-SALA Lad-Saf Cable Sleeve ("Lad-Saf sleeve"). Plaintiff alleges that the Lad-Saf sleeve Decedent Payman Biazarikari was using while working on a

---

[1] There is no "Capital Safety, Inc." DB Industries, Inc. converted into DB Industries, LLC on December 31, 2012, and does business as Capital Safety USA.

communication tower failed to arrest his fall, resulting in his severe injuries and death. Plaintiff asserts product liability claims against Capital Safety under Virginia law. Other accidents have occurred with workers using the Lad-Saf sleeve, and a small number of lawsuits are pending in jurisdictions apart from this Court. The primary basis for this motion is Plaintiff's desire to share information and documents produced in this lawsuit with plaintiffs' counsel in other cases.

Discovery is in its early stages in this matter, and Plaintiff has recently served Capital Safety with discovery requests seeking, among other things, design, testing, manufacturing, cost, and pricing information for the Lad-Saf cable sleeve. Capital Safety considers much of the requested information confidential, proprietary, and trade secret, and if disclosed would significantly harm Capital Safety's competitive and business advantage in the marketplace. To address Capital Safety's concern over production of such competitively sensitive materials, the parties agreed to the necessity of a protective order.

Plaintiff's counsel provided an initial draft of a protective order in early January 2017. Plaintiff's proposed protective order permitted Plaintiff's counsel to share Capital Safety's confidential documents with attorneys representing parties in any other case where the alleged injury resulted from a fall while using a Lad-Saf sleeve,[2] and defined the term "documents" to include only certain specific types of documents and categories of information.[3] Capital Safety

---

[2] The sharing provision proposed by Plaintiff is as follows:

"Protected Documents shall be disclosed only to 'Qualified Persons.' Qualified Persons are limited to:

* * *

(g) Counsel involved in any other LadSaf sleeve failure to arrest or prevent fall in similar litigation, after counsel receiving the documents agreed in writing to be bound by the provisions of this Agreement and Order. . . ."

[3]Plaintiff includes the following language:

4

could not agree to permit the sharing of its confidential documents with attorneys not associated with this case, nor could Capital Safety agree to language limiting its ability in good faith to designate as confidential any information in its own documents. In response, Capital Safety provided Plaintiff's counsel with an alternative draft that did not include these provisions. Counsel for the parties continued negotiating various aspects of the proposed protective order, ultimately reaching an agreement as to most of the proposed protective order's language. The only remaining issues are whether the protective order should permit Plaintiff's counsel to share Capital Safety's confidential information and documents with other attorneys who are also prosecuting cases involving the Lad-Saf cable sleeve, and whether Plaintiff's proposed language defining which classes of Capital Safety documents and information are confidential is appropriate or necessary.

This case involves a specific accident and a unique set of facts that distinguishes it from the other pending cases. The determination whether other plaintiffs should have access to

---

"As used in this Protective Order, the term "documents" means:

    a. All design drawings and specification pertinent to the design at issue in this case.
    b. All developmental, prototype, mechanical, and production (certification) test reports, photographs and films pertinent to the LadSaf sleeve.
    c. All internal minutes of meetings, memoranda of engineers and budgetary information pertinent to the consideration of the components at issue in this case, alternative designs considered but not chosen, and information regarding the risks and benefits of the chosen and alternative designs.
    d. Failure Mode and Effect Analysis for the design at issue in this case.
    e. Communications received and sent regarding the claimed injuries or deaths purportedly stemming from the performance of the LadSaf sleeve.

    Information obtained from Defendant DB Industries, LLC in discovery which does not constitute trade secret or other confidential research development, or commercial information is not the subject of this Agreement and Order."

documents produced in this case should be made by the Judges in those cases. Capital Safety does not wish to stymie Plaintiff's legitimate discovery requests; rather, it asserts that plaintiffs in other cases should obtain discovery by the same means—through their own discovery requests, made in their own cases, and not through a loophole in the Protective Order governing this case.

Capital Safety objects to expanding the scope of the proposed protective order to include Plaintiff's sharing provision language, and submits that the proposed protective order attached as Exhibit 1 adequately affords Plaintiff access to the confidential information and documents necessary for the development of her case. It is also unwarranted and unnecessary to limit Capital Safety's ability to make a good faith determination as to what information contained in its documents is confidential. The proposed protective order provides Plaintiff with the means to challenge Capital Safety's confidential designations. Accordingly, Capital Safety respectfully requests that the Court enter the proposed protective order attached as Exhibit 1.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(c)(1) authorizes district courts to enter protective orders restricting "the disclosure of information exchanged in discovery for good cause, such as preservation of confidential commercial information and trade secrets," *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, No. 3:14CV51, 2015 WL 7431412, at *2 (W.D. Va. Nov. 20, 2015) (cites omitted), and "enjoy broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]," *Mylan Labs., Inc. v. AKZO, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (internal quotes and citation omitted). The party seeking a protective order has the burden of showing good cause. *Parker Compound Bows, Inc. v. Hunter's Mfg. Co., Inc.*, No. 5:14-cv-4,

2014 WL 12462305, at *2 (W.D. Va. Dec. 8, 2014), *citing In re Deutsche Bank Trust Co.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010). Should the court find that disclosure of confidential commercial information would create a risk of harm to the party's interest, "it must balance the risk against the potential harm to the opposing party's case from the restrictions placed on the information." *Parker*, 2014 WL 12462305 at *2; *Deutsche Bank*, 605 F.3d at 1380.

### III. ARGUMENT

To comply with its discovery and initial disclosure obligations, Capital Safety will need to produce confidential, trade secret, proprietary, and competitively sensitive information and documents regarding its Lad-Saf sleeve, the disclosure of which would harm Capital Safety's competitive position in the marketplace. Good cause exists to enter the proposed protective order attached as Exhibit 1 -- and exclude the Plaintiff's proposed language permitting the sharing of Capital Safety's confidential documents and information with attorneys not associated with this case -- for the following reasons: (1) The weight of case law rejects the sharing provision proposed by Plaintiff; (2) Capital Safety's proposed protective order does not in any way prejudice Plaintiff in preparing and prosecuting her claims in this case; (3) Plaintiff's sharing provision would require the Court to address disputes and make determinations related to actions in other jurisdictions, defeating judicial economy; (4) Plaintiff's proposed sharing provision increases the risk of disclosure of Capital Safety's confidential and proprietary information; and (5) Plaintiff's proposed definition of "documents" is unwarranted and unnecessary because it unfairly limits Capital Safety's ability to protect information it considers confidential.

**A.** *The weight of case law rejects the sharing provision proposed by Plaintiff.*

Federal courts have overwhelmingly rejected sharing provisions in protective orders regarding confidential documents. *See, e.g., Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 306 (N.D. Ill. 1993) ("[w]e agree that case law encourages sharing of *nonconfidential* information with other litigants, but this does not apply to the sharing of confidential information under a protective order that limits access to certain identified individuals."); *Clippard v. Yamaha Motor Corp.*, No. 5:14-CV-83-R, 2015 WL 1208551, at *2 (W.D. Ky. Mar. 17, 2015) ("[w]hile some state courts have embraced upfront sharing to streamline discovery and reduce the litigation costs, 'other courts, particularly in the federal system [] have been hostile to upfront sharing provisions.'") (*cites omitted*); *Massachusetts v. Mylan Lab., Inc.*, 246 F.R.D. 87, 91 (D. Mass. 2007) (sharing provisions "eviscerate the effectiveness of the protective order … [and] expansive sharing of confidential information would do nothing to advance the present litigation; indeed, the obverse seems likely."); *Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL, 2007 WL 4300221, at *9 (D. Kan. Dec. 8, 2007) (rejecting protective order which would permit sharing confidential information inasmuch as the "United States' interest in that regard simply does not outweigh Raytheon's interest"); *Harris v. Kellogg, Brown & Root Servs., Inc.*, No. CIV. A. 08-563, 2008 WL 5246017, at *4 (W.D. Pa. Dec. 15, 2008) (rejecting plaintiffs' request for a "blanket sharing provision" because such provisions "undermin[e] the purpose of a confidentiality order"); *Doriand v. Centocor Inc.*, No. 1:09–cv–00078–MP–AK, 2010 WL 325742, at *1 (N.D. Fla. Jan. 26, 2010) (rejecting plaintiff's request for a sharing provision due to the risk of inappropriate release of the defendants' confidential information); *Scott v. Monsanto Co.*, 868 F.2d 786, 792 (5th Cir. 1989) (district court order rejecting sharing provision affirmed). Courts have rejected sharing provisions for good reason: they compromise the protection of competitively sensitive information; they are difficult, if not impossible to enforce

once the documents are transferred to third parties outside of the case; and they provide no benefit with respect to the prosecution of the claims actually at issue in the case. For these reasons alone, the Court should reject Plaintiff's request for a sharing provision in the Protective Order.

B.  *Capital Safety's proposed protective order does not limit Plaintiff's ability to prosecute her claims in this case.*

One of the purposes of a protective order is to limit the dissemination of confidential trade-secret and proprietary information. *Fed. R. Civ. P. 26(c)(1)(G)*. Capital Safety's proposed protective order adequately achieves this goal while permitting the Plaintiff, Plaintiff's counsel, and Plaintiff's experts access to Capital Safety's confidential documents and information. Plaintiff and her attorneys are not prejudiced in their ability to review the confidential materials, consult with their experts, and formulate their trial strategy. In no way does the proposed protective order prevent Plaintiff's counsel from consulting with attorneys in other cases about non-confidential information and documents. Accordingly, Plaintiff's counsel will not be prejudiced by their inability to exchange confidential information and documents with plaintiffs' attorneys who are prosecuting cases against Capital Safety in different jurisdictions and operating under different protective orders – Plaintiff simply will not be able to disseminate the confidential materials to individuals not under the jurisdiction and control of this Court.

Non-sharing protective orders are routinely entered because they result in no hardship to the litigant opposing the protective order. *See Steede v. General Motors, LLC*, No. 11-2351-STA-dkv, 2012 WL 2089761 (W.D. Tenn. June 8, 2012); *see also Miller v. York Risk Services Group*, 2014 WL 936307, * 1 (D. Ariz. Mar. 11, 2014). In *Steede*, the court held that a non-sharing protective order would not prejudice the plaintiff, explaining: "Plaintiff has not shown

how entry of a 'non-sharing' protective order results in hardship for her case. Under the terms of the protective order … [p]lainitff will receive [d]efendant's confidential information in discovery and have the ability to use it in *this case.* The protective order simply does not allow [p]laintiff to disseminate the information to non-parties or litigants in *other cases.* Plaintiff has not shown how this restriction, which is *commonly included* in protective orders, prejudices her ability to obtain discovery in support of *her own claims."* 2012 WL 2089761, at *4 (*emphasis added*).

The same is true here -- Capital Safety's proposed protective order will not prejudice Plaintiff in any way for purposes of the *claims in this litigation.* The protective order simply does not allow Plaintiff to disseminate the information to litigants in *other* cases. Therefore, as a practical matter the protective order does not in any way "deny Plaintiff or [his] attorneys the use of Defendant's confidential information." *Id.*; *see also, Miller*, 2014 WL 936307, at * 1 (D. Ariz. Mar. 11, 2014) (entering a protective order that prohibits sharing with parties engaged in similar litigation with the defendant because "such a restriction does not prejudice the interests of Plaintiffs in this case").

C. *Plaintiff's proposed sharing provision defeats judicial economy.*

Plaintiff's proposed sharing provision contemplates that this Court will assume jurisdiction over every lawyer, nationwide, with whom Plaintiff's counsel chooses to share confidential, proprietary and trade secret documents produced by Capital Safety. Thus, if the Court were to grant Plaintiff's request for a sharing provision, it would be called on to enforce its Order with respect to complete strangers to this case. Adjudicating the rights of these collateral litigants would ensnare the Court in disputes having nothing to do with this case. *See, e.g., Miller*, 2014 WL 936307, at *1 (excluding sharing provision because it prevents the court from

having to police its own order in other tribunals, which "invites confusion and controversy"); *Doriand*, 2010 WL 325742, at *1. Moreover, the Court would have to maintain jurisdiction over those who received the confidential documents, long after Plaintiff's own claims have been resolved.

If the Court refuses to adopt Plaintiff's sharing provision, as it should, other plaintiffs and their attorneys can simply go through the appropriate steps to obtain discovery of Capital Safety's confidential documents in their own cases, subject to the procedural safeguards provided by the protective orders that are binding on those litigants. *See Long v. TRW Vehicle Safety Sys., Inc.*, CV-09-2209-PHX-DGC, 2010 WL 1740831, at *1 (D. Ariz. Apr. 29, 2010); *Kelly v. Provident Life & Accident Ins.*, No. 04-CV-0807-WQH(JMA), 2008 WL 5132851, at *3 (S.D. Cal. Dec. 5, 2008). There is simply no reason for the Court to accept the burden and expense of overseeing the distribution of confidential documents outside of this case.

**D.** ***Plaintiff's proposed sharing provision increases the risk of disclosure of Capital Safety's confidential and proprietary information.***

Sharing provisions in protective orders substantially increase the likelihood that improper disclosures will occur as access to the protected information expands. *See, e.g., Culinary Foods, Inc.,* 151 F.R.D. at 306-07. The District Court for the Northern District of Georgia specifically noted this risk in denying a protective order in *Williams v. Taser Int'l, Inc.*, 1:06-CV-0051-RWS, 2006 WL 1835437 (N.D. Ga. June 30, 2006):

> The Court appreciates why Plaintiffs would desire to share confidential documents with other attorneys involved in litigation against Taser, and in no way doubts counsel's intent to abide by the terms of the protective order. That said, the Court recognizes that <u>the more widely confidential documents are disseminated, it becomes both more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order</u>. In this case, the Court finds the risk to Taser posed by the release of its confidential information,

11

> and the difficulties of enforcing a protective order when confidential documents are widely disseminated, outweigh Plaintiffs' interest in sharing that information among various plaintiffs' counsel and experts. <u>Thus, the Court declines to allow Plaintiffs to either retain confidential documents upon the conclusion of this litigation, or to share confidential documents with other attorneys or experts involved in litigation against Taser</u>.

*9-10 (emphasis added). The same rationale applies here, especially given the nationwide scope of possible plaintiffs' counsel who would have access to Capital Safety's confidential information and documents should the protective order in this case include Plaintiff's sharing provision

### E. *Plaintiff's proposed definition of "documents" is unwarranted and unnecessary because it limits Capital Safety's ability to designate what information in its documents is confidential.*

Plaintiff's proposal to define at the outset the categories of documents that may be treated as "confidential" inappropriately limits Capital Safety's ability to protect the information it believes should be protected. Categorizing documents subject to protection is more typically a feature of "umbrella" protective orders, commonly utilized in complex federal litigation where voluminous documents will be produced by a party. *See Norris v. Excel Industries, Inc.*, No. 5:14-cv-29, 2015 WL 4431022 (W.D. Va. July 20, 2015), at *2 (cites omitted). Umbrella protective orders "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication," but they also require the court to first determine whether "'good cause exists to protect each category' of documents in the order." *Id*. Capital Safety does not anticipate that its production of confidential documents will be so large as to require the Court to make a "good cause" finding regarding the categories of documents which should be protected. Capital Safety's proposed protective order provides a mechanism for Plaintiff to challenge confidential designations, and Capital Safety pledges to meet and confer with Plaintiff to resolve challenges without Court intervention wherever possible. Accordingly, while

Plaintiff's defined categories may likely include many of Capital Safety's confidential documents, the proposed language it is unnecessary and only serves to limit Capital Safety's ability to make its own confidential designations.

WHEREFORE, Capital Safety respectfully requests that this Court grant Capital Safety's Motion, and enter the proposed protective order attached hereto as Exhibit 1.

Respectfully submitted,

Dated: March 17, 2017.                     *s/CARL R. SCHWERTZ* _____

Carl R. Schwertz, Esq. (VSB#27399)
Jeffrey S. Poretz, Esq. (VSB#38529)
MILES & STOCKBRDIGE P.C.
1715 Pinnacle Drive, Suite 1500
Tysons Corner, VA 22102-3833
Direct: 703-610-8691
Fax: 703-610-8686
E-mail: cschwertz@milesstockbridge.com
Email: jporetz@milesstockbridge.com

*Counsel for DB INDUSTRIES, LLC d/b/a CAPITAL SAFETY USA*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of March, 2017, a true and correct copy of the foregoing **Motion for Protective Order** and **Memorandum in Support of Motion for Protective Order** was served by CM/ECF, upon the following:

Philip Baker
Sanzone & Baker
PO Box 1078
Lynchburg, VA 24505
COUNSEL FOR PLAINTIFF

Donald Morris
Law Office of Anthony K. Jones
3957 Westerre Pkwy., Suite 320
Richmond, VA 23233
COUNSEL FOR DEFENDANT GME SUPPLY CO.

          *s/CARL R. SCHWERTZ*_____

## INDEX OF EXHIBITS

**Exhibit**

1          Proposed Protective Order