IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| POUNEH BIAZARI, Administrator of the Estate of Payman Biazarikari, Deceased, <br>     Plaintiff, <br><br> v. <br><br> DB INDUSTRIES, LLC, d/b/a <br> Capital Safety USA, <br>     Defendant. | Civil Action No. 5:16-cv-49 <br><br> **MEMORANDUM OPINION & ORDER** <br><br> By:   Joel C. Hoppe <br>       United States Magistrate Judge |

This matter is before the Court on Defendant DB Industries, LLC's Motion for Protective Order, ECF No. 21 ("Def. Mot. & Br."). The parties agree that entry of a protective order is appropriate, and they also agree as to most of the terms for a protective order. *See id.* at 4–5. They disagree, however, as to two key provisions: (1) whether the protective order should define in advance the categories of information that may be designated as confidential or proprietary or as a trade secret (and therefore protected from disclosure to unauthorized persons), and if such a provision is included, the scope of information that would fall within that designation; and (2) whether the protective order should allow Plaintiff to share such confidential information with similarly situated plaintiffs in other pending civil actions. *See id.* at 4–6; *see also* Pl. Br. 3–4, ECF No. 22.

I. Background

In this products liability action, Plaintiff Pouneh Biazari, in her capacity as Administrator of the Estate of Payman Biazarikari ("Decedent"), contends that Defendant manufactured and sold a defective fall prevention device, the LAD-SAF Cable Sleeve ("LAD-SAF sleeve"). Pl. Br. 1–2. Decedent was wearing the LAD-SAF sleeve while working on a cellular tower. *Id.* at 2. Plaintiff alleges that although Decedent used the device in an appropriate manner, it failed to

1

arrest his fall from the tower. *Id.* Decedent sustained severe injuries from the fall and subsequently died. *Id.* Defendant has since recalled the "X1" model of the LAD-SAF sleeve (the model Decedent was wearing at the time of his injury) from the market, although the newer "X2" and "X3" models are still in use. *Id.*

In addition to this action, other suits have been filed in the federal courts against Defendant and its parent, 3M Company, on behalf of individuals who were killed or injured after the LAD-SAF sleeve allegedly failed to prevent their falls. *See Flack v. DB Indus.*, No. 3:11-cv-00088-JAJ-TJS (S.D. Iowa);[1] *Braman v. DB Indus., Inc.*, No. 2:16-CV-13897-VAR-MKM (E.D. Mich.); *McDonald v. DB Indus., LLC*, No. 4:16-cv-03037-BYP (N.D. Ohio); *Isham v. 3M Co.*, No. 5:16-cv-0881-HE (W.D. Okla.); *Scott v. 3M Co.*, No. 4:16-cv-02775 (S.D. Tex.) (collectively, "collateral LAD-SAF cases").[2] Plaintiff seeks to share confidential information obtained during discovery in this matter with counsel for the plaintiffs in those cases so as to reduce the costs of cumulative discovery and allow for her and the other plaintiffs to collaborate with one another in formulating their litigation strategies.

## II. Discussion

A court may issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense, including . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order bears the burden of showing good cause for it. *In re Deutsche Bank Tr. Co. Ams.*, 605 F.3d 1373, 1378

---

[1] This case was remanded to state court in 2012. *See* Order, *Flack v. DB Indus.*, No. 3:11-cv-00088-JAJ-TJS (S.D. Iowa), ECF No. 59.

[2] In her brief, Plaintiff also named *Marc Morris and Liberty Mutual Insurance Co. v. DB Industries* as a collateral case. Pl. Br. 2. She did not include a docket number or court in which that case was pending, and the Court has been unable to find a federal action under that name.

(Fed. Cir. 2010). The proponent must show that the information is confidential and that its disclosure would create a risk of harm to the party's interests. *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1357–58 (Fed Cir. 2011). If a court finds that such a risk exists, it must balance the risk against the potential harm to the opposing party's case from the restrictions placed on the information. *Deutsche Bank*, 605 F.3d at 1380; *accord Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010).

A. *Definition and Scope of Confidential Information*

Defendant identifies some broad categories of discoverable information that should be protected from unauthorized disclosure, including information pertaining to the LAD-SAF sleeve's design, testing, and development, as well as Defendant's investigations of any complaints about the product.[3] It contends that within these broad categories it should retain discretion to decide, on a case-by-case basis, which documents are to be considered confidential. Def. Mot. & Br. 5–6, 12–13. If Plaintiff objects to such a designation, the parties would confer to determine whether confidential treatment is merited and, if necessary, bring their dispute before the Court for resolution. *Id.* at 12–13.

Plaintiff, for the most part,[4] agrees that information falling within these categories would be proprietary and therefore protected from disclosure. Rather than leaving Defendant to make

---

[3] The Court does not have before it specific information about Defendant's investigation of complaints about its product; thus, I do not decide whether part or all of the investigative documents warrant protection. In providing guidance to the parties as to the parameters of Rule 26(c)'s protections, the Court notes that documents demonstrating a defendant's knowledge that its product is dangerous are not protected from public disclosure merely because they are embarrassing or damaging to the defendant. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993). A defendant's investigation of complaints, however, may also reveal the steps it took to address the dangerous condition or other commercially sensitive strategies that likely would warrant protection. *Id.*

[4] Plaintiff suggests that documents pertaining to the X1 model may no longer be commercially sensitive because that model has been taken off the market. *See* Pl. Br. 3, 5. Defendant has noted, however, that the X2 and X3 models build off the design of the X1. Thus, even though the X1 is no longer marketed by Defendant, proprietary information relating to that model could still cause commercial disadvantage in the

3

confidentiality determinations on a document-by-document basis, however, Plaintiff seeks to include language in the protective order that would limit confidential protection to the following specific classes of documents:

> a. All design drawings and specification[s] pertinent to the design at issue in this case.
> b. All developmental, prototype, mechanical, and production (certification) test reports, photographs and films pertinent to the LadSaf sleeve.
> c. All internal minutes of meetings, memoranda of engineers and budgetary information pertinent to the consideration of the components at issue in this case, alternative designs considered but not chosen, and information regarding the risks and benefits of the chosen and alternative designs.
> d. Failure Mode and Effect Analysis for the design at issue in this case.
> e. Communications received and sent regarding the claimed injuries or deaths purportedly stemming from the performance of the LadSaf sleeve.

Def. Mot. & Br. 4 n.3; *accord* Pl. Br. 8–9. Plaintiff maintains that by setting out a more precise definition of confidential information from the outset, the parties might proceed with discovery more efficiently and reduce the likelihood of disputes that may need to be brought before the Court. Pl. Br. 9. Defendant argues that this is unnecessary and would hinder its ability to make good-faith confidentiality designations for documents falling outside this scope. Def. Mot. & Br. 12–13.

An umbrella protective order such as Plaintiff proposes "may be utilized when parties to litigation anticipate discovery to be voluminous." *Norris v. Excel Indus., Inc.*, No. 5:14cv29, 2015 WL 4431022, at *2 (W.D. Va. July 20, 2015). Here, Defendant anticipates that the volume of discovery will be relatively modest. Def. Mot. & Br. 12. Accordingly, in this case there are fewer benefits of efficiency to be gained by designating categories of confidential documents at the outset with the specificity suggested by Plaintiff than there would be in more complex

---

hands of a competitor and therefore should be presumed confidential. *See Culinary Foods*, 151 F.R.D. at 303. Defendant has the stronger argument. As discovery proceeds, Plaintiff may still challenge the designation of particular documents pertaining to the X1 if she believes these are not trade secrets or that public disclosure would not otherwise threaten Defendant's competitive position.

4

litigation. The parties thus far have demonstrated an ability to work with one another on discovery matters, and there is no reason at this time to doubt that Defendant will make its confidentiality designations in good faith. Furthermore, Plaintiff will still be able to challenge Defendant's designations and, if a more exacting definition of confidentiality proves necessary, may move to modify the protective order to incorporate her proposed language.

Notwithstanding my finding that such a precise definition of confidential information is unnecessary at this time, the protective order in this case must still make clear that documents treated as confidential fall within the parameters set forth in Rule 26(c)(1)(G) protecting "trade secret or other confidential research, development, or commercial information." After all, a court may issue a protective order only upon finding that good cause exists to limit dissemination of commercially sensitive information provided in discovery. A protective order that fails to acknowledge any parameters for what constitutes "confidential" information would violate Rule 26(c). *See Norris*, 2015 WL 4431022, at *4–5 (citing *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 566 (E.D. Va. 2010)). Defendant's proposed protective order does not satisfy this standard even though its counsel's representations about the nature of the documents show that they are commercially sensitive and their dissemination would cause harm. Accordingly, any documents designated confidential under the protective order must concern a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G).

B.   *Sharing with Collateral Plaintiffs*

Defendant also objects to the inclusion of a provision in the protective order allowing Plaintiff to share confidential information with plaintiffs in the collateral LAD-SAF cases. Def. Mot. & Br. 7–12. As Defendant notes, such "upfront sharing provisions," in which collateral

litigants are granted permission before commencement of discovery to access confidential materials, are usually disfavored in the federal courts. *Clippard ex rel. Clippard v. Yamaha Motor Corp.*, No. 5:14-CV-83-R, 2015 WL 1208551, at *2 (W.D. Ky. Mar. 17, 2015) (citing *Long v. TRW Vehicle Safety Sys., Inc.*, No. CV-09-2209, 2010 WL 1740831, at *1 (D. Ariz. Apr. 29, 2010)); *see also Harris v. Kellogg, Brown & Root Servs., Inc.*, No. 08-563, 2008 WL 5246017, at *3–6 (W.D. Pa. Dec. 15, 2008) (explaining reasons for denying plaintiff's request for a broad upfront sharing provision, including that it would cede control of defendant's proprietary information entirely to plaintiff); *Massachusetts v. Mylan Labs., Inc.*, 246 F.R.D. 87, 90–91 (D. Mass. 2007) (rejecting provision that would allow sharing with other law enforcement entities because "such broad disclosure would eviscerate the effectiveness of the protective order"); *Gil v. Ford Motor Co.*, No. 1:06cv122, 2007 WL 2580792, at *4–6 (N.D. W. Va. Sept. 4, 2007) (finding that caselaw did not support plaintiff's assertion that upfront sharing provisions were favored by a majority of courts); *Culinary Foods*, 151 F.R.D. at 306–07 (rejecting plaintiff's request to share confidential information with collateral litigants because doing so "would unduly raise the risk that Raychem's competitors will obtain access to this confidential information"). *But see Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653–55 (D. Md. 1987) (allowing sharing of confidential information with other products liability plaintiffs); *Burlington City Bd. of Educ. v. U.S. Mineral Prods. Co.*, 115 F.R.D. 188, 190–91 (M.D.N.C. 1987) (endorsing collaboration and sharing of information among collateral litigants and noting that "even confidential material should be shared when possible").

On balance, the factors present in this case show that an upfront sharing provision would not be appropriate at this time. The parties agree that Defendant has an interest in preventing the disclosure of commercially sensitive material to the public and its competitors, and as a matter of

simple probability the risk of such disclosure (whether intentional or inadvertent) increases as more individuals gain access to this material. Likewise, the Court's range of options to remedy violations of the protective order is necessarily diminished when the violations are committed by nonparties. *See Williams v. Taser Int'l, Inc.*, No. 1:06-CV-0051, 2006 WL 1835437, at *2 (N.D. Ga. June 30, 2006) ("[T]he Court recognizes that the more widely confidential documents are disseminated, it becomes both more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order."). Meanwhile, Plaintiff has not shown how she would directly benefit from the inclusion of a sharing provision in the protective order, as she would have access to confidential documents regardless of whether she can share them with collateral litigants. *See Steede v. Gen. Motors, LLC*, No. 11-2351, 2012 WL 2089761, at *4 (W.D. Tenn. June 8, 2012) ("For her part Plaintiff has not shown how entry of a 'non-sharing' protective order results in hardship for her case," as this restriction did not "prejudice[] her ability to obtain discovery in support of her own claims."); *Gil*, 2007 WL 2580792, at *5 (noting that plaintiff "will not be precluded in any way from receiving discovery due to the non-sharing protective order").[5]

This is not to say that disclosure of confidential material to the plaintiffs in the collateral LAD-SAF cases could never be justified. The Court is mindful that the purpose of limiting the

---

[5] Arguably, the calculus of interests derived from sharing confidential information might include more indirect benefits to Plaintiff, such as being able to compare discovery responses with collateral litigants, reduce the cost and burden of evaluating duplicative sets of documents, and collaborate with other plaintiffs to create a common litigation strategy. *See* Dustin B. Benham, *Proportionality, Pretrial Confidentiality, and Discovery Sharing*, 71 Wash. & Lee L. Rev. 2181, 2199 (2014) (describing the benefits of discovery sharing among similarly situated litigants). Some courts have also looked beyond the plaintiff's own interests in disclosure and considered the needs of nonparties. *See Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, 291 F.R.D. 114, 118, 122–23 (S.D. W. Va. 2013) (balancing potential harm to the defendant against the *public's* interest in disclosure). As explained below, however, I find that these factors would best be considered if presented to the Court by the collateral litigants themselves, as they have the most direct and substantial interest in disclosure.

dissemination of proprietary information is to protect the producing party from competitive disadvantage in the marketplace, not to make litigation more burdensome for its adversaries. *See Metro Media Entm't, LLC v. Steinruck*, No. 12-0347, 2013 WL 1833266, at *8 (D. Md. Apr. 30, 2013) (noting that sharing discovery with collateral litigants is appropriate under the Federal Rules, and therefore could not by itself provide a basis for the producing party to object to disclosure); *Ohio Valley Envtl. Coal.*, 291 F.R.D. at 121–22 (rejecting the defendant's argument that documents should be protected on the basis that they might be used against it in another litigation); *Culinary Foods*, 151 F.R.D. at 306 (stating that the receiving party's intent to share the information with other litigants is not by itself good cause for a protective order except where litigation is commenced solely to undermine discovery restrictions in other cases).

Circumstances may arise that justify sharing among plaintiffs. For example, during the motion hearing, counsel for Plaintiff suggested that he and counsel for plaintiffs in the collateral LAD-SAF cases may retain a common expert. It may therefore prove reasonable to allow Plaintiff to share confidential documents with litigants in the collateral LAD-SAF cases if those litigants also can show a need for access to the documents and the Court can be adequately assured that the confidential information would be safeguarded from inappropriate disclosure.

Furthermore, Plaintiff has identified specific cases against Defendant that have already commenced, and which are likely to invoke substantially similar issues as in this matter. This alleviates some of the concerns that have led other courts to be skeptical of proposals to share confidential material with nonparties. *Cf. Harris*, 2008 WL 5246017, at *3–4 (finding the plaintiff's proposed language to be overbroad, as it "would essentially permit the disclosure of Defendant's confidential information to any prospective litigant with any type of claim against Defendant arising out of its activities in Iraq or Afghanistan"); *Mylan Labs.*, 246 F.R.D. at 90–91

(finding that proposal to share information with law enforcement to aid in potential investigations, rather than actual pending litigation, was insufficient to establish good cause for sharing provision); *Gil*, 2007 WL 2580792, at *6 (expressing concern that plaintiff sought disclosure to unknown litigants); *Guthrie v. Smith & Nephew, Inc.*, No. 2:05cv903, 2006 U.S. Dist. LEXIS 88764, at *5 n.1 (S.D. W. Va. Dec. 7, 2006) ("It appears to the court, that Plaintiffs' case is not one of many other similar lawsuits filed elsewhere, such that document sharing would result in overall efficiency and judicial economy."). At the moment, however, the information before the Court is insufficient to evaluate whether sharing is necessary and adequate protections are in place to guard against dissemination of confidential information.

For the foregoing reasons, I find that entry of an upfront sharing provision is not justified in this case. A more appropriate procedure, instead, would be for the plaintiffs in the collateral LAD-SAF cases to move to intervene and present their arguments for access to confidential information directly to the Court.[6] *Mylan Labs.*, 246 F.R.D. at 91–92 (citing, *inter alia*, 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2044.1 (2d ed. 1994)). This method has the advantage of allowing those litigants to demonstrate a specific need for particular documents in an adversarial context, rather than having Plaintiff present abstract arguments on their behalf. *Id.*; *accord Clippard*, 2015 WL 1208551, at *4 & n.5. It would also allow the Court to ascertain whether sufficient protections against disclosure are in place in the collateral LAD-SAF cases, thereby offering both this Court and the court in which the collateral proceeding is filed the full panoply of measures to address violations of any protective order. *See Culinary Foods*, 151 F.R.D. at 302–03 (noting that a court may address a party's discovery abuses arising from violations of protective order from another case, but those violations of the protective order

---

[6] Of course, this would only become necessary if the parties cannot first reach agreement as to whether sharing with a particular collateral plaintiff would be appropriate.

9

would need to be enforced by the other court that issued it). Accordingly, the Court declines Plaintiff's request for an upfront sharing provision.

III. Conclusion & Order

In accordance with the foregoing memorandum opinion, I find that Defendant has shown good cause for entry of a protective order. Defendant's Motion for Protective Order, ECF No. 21, is therefore **GRANTED**. Consistent with this Memorandum Opinion and Order, only those documents that constitute "trade secret or other confidential research, development, or commercial information," Fed. R. Civ. P. 26(c)(1)(G), may be identified as confidential. With this caveat, the Court **ORDERS** that the Clerk **FILE** the protective order, ECF No. 21-1, submitted by the Defendant.

It is so ORDERED.

The Clerk shall send a copy of this Memorandum Opinion and Order to the parties.

ENTER: April 26, 2017

Joel C. Hoppe
United States Magistrate Judge